1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  FEDERICO ESCOBEDO,              )    Case No. 12cv0471 L (BGS)
                                    )
12                Plaintiff,        )    **ORDER DENYING DEFENDANT'S**
                                    )    **MOTION FOR SUMMARY**
13  v.                              )    **JUDGMENT [DOC. 31]**
                                    )
14  UNITED STATES OF AMERICA,       )
                                    )
15                Defendant.        )
                                    )
16  _____   )

17        On February 24, 2012, Plaintiff Federico Escobedo commenced this tax refund action

18  against Defendant United States of America. Plaintiff alleges that he is entitled to a refund of the

19  federal income taxes he paid to the United States in tax years 2005 and 2006 because, under a

20  bilateral treaty between the United States and Mexico that governs dual resident taxpayers, he

21  was considered a resident of Mexico for federal income tax purposes during those years.

22  Defendant now moves for summary judgment.

23        The Court found this motion suitable for determination on the papers submitted and

24  without oral argument.  *See* Civ. L.R. 7.1(d.1). For the following reasons, the Court **DENIES**

25  Defendant's motion for summary judgment.

26  //

27  //

28  //

## I.   BACKGROUND

Plaintiff Federico Escobedo timely filed a U.S. Individual Income Tax Return (Form 1040) with the Internal Revenue Service ("IRS") for the 2005 and 2006 tax years and paid more than the amounts shown due on the Forms 1040. (Castaldi Decl., Ex. C, 41-42: 18-25, 1-3; Castaldi Decl. Exs. H and I.)  On February 24 and 26, 2009, respectively, Plaintiff filed Amended U.S. Individual Income Tax Returns (Forms 1040X) with the IRS for the 2005 and 2006 tax years, claiming a refund of all the taxes, penalties, and interest he paid to the IRS for those years.  (Castaldi Decl. Exs. L and M.)

In his Forms 1040X, Plaintiff asserted he is entitled to a refund because he should have been considered a tax resident of Mexico for 2005 and 2006.  (Castaldi Decl. Exs. L and M.) On February 26, 2010, the IRS denied both of Plaintiff's claims for a refund.  On February 24, 2012, Plaintiff commenced this action for a tax refund on the same grounds.  (Compl. [Doc. 1].) Defendant now moves for summary judgment on the basis that Plaintiff was properly considered a United States resident for tax purposes in 2005 and 2006 his "center of vital interests" and habitual abode was in the United States.[1]

## II.   LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury

---

[1] Defendant also moved for partial summary judgment on the grounds that the amount of Plaintiff's refund claim for the 2006 tax year was incorrect.  (Def.'s Mot. 13:5–17.) In his response, Plaintiff clarified how the amount of the claim was calculated.  (Pl.'s Opp'n 16:20–28, 17:1–7.) Apparently, Defendant was satisfied with Plaintiff's response, as Defendant concedes that this is no longer an issue.  (Def.'s Reply 10:8–10.) Accordingly, the Court **DENIES** Defendant's motion for summary judgment with respect to the amount Plaintiff claimed as a refund for the 2006 tax year.

could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 242, 252). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at

12cv0471

587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

## III.   DISCUSSION

### A.   The Convention Between the United States and Mexico for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Income, and the Interpretation of the Same

Signed on September 18, 1992, a bilateral treaty between the United States and Mexico governs the tax liability of dual residents for federal income tax purposes. Convention Between the United States and Mexico for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Income, U.S.-Mex., art.4, Sept. 18, 1992, S. TREATY DOC. NO. 103-7 (1994) [hereinafter the Convention]. Article 4 of the Convention states that where an individual is a resident of both the United States and Mexico, his or her residence, and thus where he or she pays income tax, shall be determined as follows:

> a) he shall be deemed to be a resident of the State in which he has a permanent home available to him; if he has a permanent home available to him in both Contracting States, he shall be deemed to be a resident of the State with which his personal and economic relations are closer (center of vital interests);
>
> b) if the State in which he has his center of vital interests cannot be determined, or if he does not have a permanent home available to him in either State, he shall be deemed to be a resident of the State in which he has an habitual abode;
>
> c) if he has an habitual abode in both States or in neither of them, he shall be deemed to be a resident of the State of which he is a national;
>
> d) in any other case, the competent authorities of the Contracting States shall settle the question by mutual agreement.

Convention, art. 4, ¶ 2(a-d).

Apart from the language above, the Convention does not provide guidance as to who a persons's "center of vital interests" is determined. Fortunately, the Organization for Economic Cooperation and Development ("OECD") provides interpretive authority for this phrase through

12cv0471

its model taxation treaty.[2]

## B.   Multiple Disputes of Material Fact Exist Regarding Plaintiff's "Center of Vital Interests"

With respect to the defining an individual's tax residency, the commentary to the OECD Model Treaty states the following:

14.    If the individual has a permanent home in both Contracting States, paragraph 2 gives preference to the State with which the personal and economic relations of the individual are closer, this being understood as the centre of vital interests. . . .

15.    If the individual has a permanent home in both Contracting States, it is necessary to look at the facts in order to ascertain with which of the two States his personal and economic relations are closer. Thus, regard will be had to his family

---

[2] The OECD, established in Paris in December 1960, provides its 34 member states a setting in which "to identify problems, discuss and analyse them, and promote policies to solve them." *About the OECD: History*, OECD, http://www.oecd.org/about/history/ (last visited Oct. 25, 2013). Both the United States and Mexico are members of the OECD. *Members and Partners*, OECD, http://www.oecd.org/about/membersandpartners/ (last visited Oct. 25, 2013). "In the realm of international taxation, the OECD's model convention 'has almost acquired the status of a multilateral instrument' because of the reliance placed on it by many countries in negotiating bilateral tax conventions." *Att'y Gen. of Canada v. R.J. Reynolds Tobacco Holdings*, Inc., 268 F.3d 103, n. 15 (2nd Cir. 2001) (quoting American Law Institute, *International Aspects of Unites States Income Taxation II: Unites States Income Tax Treaties* 3 (1992)).

The Senate Executive Report accompanying the Convention states that "[t]his provision of the [] treaty in some respects is based on the article on residence of the U.S. and OECD model treaties." INCOME TAX CONVENTION WITH MEXICO, WITH PROTOCOL, S. EXEC. REP. NO. 103-20, at 46 (1993). The particular provision on "center of vital interests" in the Convention is practically identical to the 1977 OECD Model Treaty. *Compare* Convention, art. 4, ¶ 2(a), *with* Model Double Taxation Convention on Income and on Capital, Report of the Organization for Economic Cooperation and Development (OECD) Committee on Fiscal Affairs [hereinafter OECD Model Treaty], art. 4, ¶ 2(a) (1977).

Additionally, both the OECD Model Convention and the United Nations Model Double Taxation Convention ("U.N. Model Convention") "have had a profound influence on international treaty practice, and have significant common provisions." U.N. Model Double Taxation Convention Between Developed and Developing Counties , at vi, para. 2 (2011). In particular, the U.N. Model Convention expressly incorporates the commentaries of its Model Treaty, which quotes language directly from the OECD commentaries on the OECD Model Treaty. *Id.* at xii, para. 20–21. Like the U.N., courts too have relied on the commentary of the OECD Model Treaty as the primary source to interpret bilateral income tax treaties. *See, e.g.*, *United States v. A.L. Burbank & Co.*, 525 F.2d 9, 15 (2d Cir. 1975) (relying on the OECD given that both the United States and Canada were OECD members when the Model Treaty and commentary were drafted); *Podd v. Comm'r*, 76 T.C.M. (CCH) 906, at *4 (1998); *N. W. Life Assurance Co. of Canada v. Commissioner*, 107 T.C. 363 (1996); *Taisei Fire & Marine Ins. Co. v. Comm'r*, 104 T.C. 535, 549–50 (1995) (interpreting a similar tax treaty between the United States and Japan by referencing the OECD Model Treaty and commentary).

12cv0471

and social relations, his occupations, his political, cultural or other activities, his place of business, the place from which he administers his property, etc. The circumstances must be examined as a whole, but it is nevertheless obvious that considerations based on the personal acts of the individual must receive special attention. If a person who has a home in one State sets up a second in the other State while retaining the first, the fact that he retains the first in the environment where he has always lived, where he has worked, and where he has his family and possessions, can, together with other elements, go to demonstrate that he has retained his centre of vital interests in the first State.

*Commentary of Article 4: Concerning the Definition of Resident*, *in* MODEL TAX CONVENTION ON INCOME AND ON CAPITAL 2010, 87 (2012).

Defendant assumes, for purposes of this motion, that Plaintiff is a resident of both the United States and Mexico and maintains a permanent home in both countries.  (Def.'s Mot. 5-6.)  In light of these assumptions, and under the Convention, the next inquiry is whether Plaintiff's "center of vital interests" lay within the United States or Mexico during the disputed period.  Defendant moves for summary judgment, arguing that there is no dispute of material fact that Plaintiff's "center of vital interests" was within the United States.  (*Id.* at 6-12.)  The Court disagrees.

Defendant first suggests that Plaintiff's "personal relations are almost entirely in the United States."  (Def.'s Mot. 9.)  According to Defendant, Plaintiff spent "almost the entirety of 2005 and 2006" in the United States, only visiting Mexico a few days.  (*Id.*, Castaldi Decl., Ex. L, Ex. FF; Castaldi Decl., Ex. M, Ex. FF.)  During his time in the United States during the relevant years, Plaintiff lived with his partner and three children during these years.  (Castaldi Decl. Ex. B, 13:15-25, 16:1-7) Two of Plaintiff's children attended universities in the United States during 2005 and 2006. (Castaldi Decl., Ex. A, 51:12-25, 52:1-4; Ex. D, 11:11-25, 12:1-14.) He owned several homes, cars, and other personal property in the United States as well. (Def.'s Statement of Facts, ¶¶ 9-12.) He also received medical services in the United States. (*Id.*, ¶¶ 20.)  Plaintiff does not dispute any of this evidence.  However, personal relations are only one consideration in the "center of vital interests" calculus.

Genuine issues of material fact do exist with respect to Plaintiff's economic relations within the United States.  For instance, with respect to Plaintiff's numerous businesses in

12cv0471

1  Mexico, Defendant suggests that Plaintiff "had little activities with those businesses in 2005 and
2  2006." (Def.'s Mot. 10.)  In essence, Defendant admits that Plaintiff had economic interests in
3  Mexico, but attempts to diminish their importance in determining his "center of vital interests."
4  In support of this claim, Defendant presents evidence that Plaintiffs only connection with these
5  Mexican businesses was coordinating litigation strategy.  (Def's Statement of Facts, ¶ 18.)
6  Defendant also provides evidence that the day to day management of these businesses were
7  turned over to Plaintiff's oldest daughter.  (*Id.*, ¶ 28.)    However, Plaintiff presents evidence that
8  directly contradicts Defendant's position.

9       First, Plaintiffs economic activities in connection with his companies were not limited to
10  litigation oversight.   Plaintiff's "primary business activity is being an investor and manager of
11  several business entities dedicated almost exclusively to real estate development in Mexico. (*See*
12  Federico Supp. Resp. To Third Set of Interrog. No. 1, Ex. 4 to Herrera Decl.)  Indeed, Plaintiff
13  routinely oversaw and directed his Mexican businesses.  (Federico Depo., 59:23-60, Ex. 1 to
14  Herrera Decl.; Aymerich Depo., 55:8-15, Ex. 3 to Herrera Decl.; Daniela Decl., ¶ 3.) Also,
15  during the period in question, Plaintiff, on behalf of his Mexican company Vidabec, negotiated a
16  sale of property to the United States for $10.5 million.  (Herrera Decl., Ex. 5.)

17       Second, Defendant presents no authority, and the Court is aware of none, that suggests
18  that litigation oversight does not constitute economic activity with respect to the "center of vital
19  interests calculus."  Instead, it appears that the litigation that Plaintiff managed was central to his
20  economic interests in Mexico, as the suits involved allegedly improper expropriation of
21  Plaintiff's company's land as well as improper restrictions on development of other real estate
22  holdings.  (Daniela Decl., ¶ 11; Ex. 6.)

23       In light of the foregoing, the Court **DENIES** Defendant's motion for summary judgment
24  because it has not met its burden of establishing the absence of a genuine issues of material fact
25  with respect to Plaintiff's "center of vital interests."

26

27  C.    **Determination of Habitual Abode is Not Appropriate at This Stage**

28       Defendant argues that if Plaintiff's "center of vital interests" is indeterminable, the court

12cv0471

must consider where he had his "habitual abode" in 2005 and 2006. (Def.'s Mot. 12:3–4.) Defendant relies on the OECD Commentary to argue that, because Plaintiff spent 243 days and 240 days in the United States in 2005 and 2006 respectively, the State in which he stayed more frequently is his "habitual abode." (*Id.* 12:6–21.) Conversely, Plaintiff argues that determining his "habitual abobe" is irrelevant to Defendant's motion because "[t]he only issue before the Court is whether the United States has carried its burden to establish that [his] center of vital interests is in the United States." (Pl.'s Opp'n 16:8–10.) Moreover, Plaintiff argues that if Defendant fails to meet its burden, "it is not a foregone conclusion that [his] center of vital interests is indeterminable." (*Id.* 16:10–12.) The Court agrees with Plaintiff.

In denying this motion with respect to Defendant's "center of vital interests" argument, the Court is not holding that Plaintiff's "center of vital interests" is indeterminable. Instead, the Court finds that Plaintiff has shown that there are genuine issues of material fact in dispute regarding his "center of vital interests" and therefore, the Court cannot grant summary judgment. Because the Court has not held that the Plaintiff's "center of vital interests" "cannot be determined," the Court cannot not reach the issue of Plaintiff's habitual abode. Convention, art. 4, ¶ 2(b).

## IV.     CONCLUSION & ORDER

In light of the foregoing, the Court **DENIES** Defendant's motion for summary judgment.

**IT IS SO ORDERED.**

DATED: November 14, 2013

M. James Lorenz

United States District Court Judge

12cv0471

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28